**Ward S. NIHISER, Plaintiff,**

v.

**Thomas E. WHITE, Secretary of the Army, Defendant.**

**No. Civ.A. 01–1817(RCL).**

United States District Court, District of Columbia.

July 16, 2002.

Jeffrey Steven Jacobovitz, Kutak Rock, Washington, DC, for plaintiff.

David Michael Glass, U.S. Dept. of Justice, Civil Div., Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on the Secretary of the Army's motion to dismiss. The Secretary argues that the complaint should be dismissed because it was filed after the statute of limitations had expired, because the plaintiff lacks standing, and because the plaintiff has failed to state a claim upon which relief can be granted. After a careful review of the opposition and reply, the applicable law, and the record in this case, the Court finds that the Secretary's motion to dismiss should be GRANTED.

## BACKGROUND

In 1990 Congress found it necessary to cut the number of personnel in the armed forces by September 30, 1995. National Defense Auth. Act for FY 1991 ("1991 Auth. Act"), Pub.L. No. 101–510, § 401, 104 Stat. 1543 (1990). To facilitate the reduction, Congress authorized the secretaries of the different branches of service to convene selection boards "to consider for discharge [certain] regular officers on the active-duty list in a grade of lieutenant colonel or commander." 1991 Auth. Act § 521, 104 Stat. 1559 (codified as amended at 10 U.S.C. § 638a(b)(4)). On March 9, 1992, the Secretary convened the Board by Memorandum of Instruction ("MOI"). Defendant's Motion to Dismiss, Nov. 21, 2001, at 2. The mission of the Board was to consider, "the involuntary separation from active duty certain majors with dates of rank between July 2, 1989 and March 1, 1992, and to make appropriate recommendations for retention to the Secretary." *Id.*

Major Ward Nihiser, a white male, was recommended to be separated from active duty in the Army as part of the reduction in force ("RIF"). Mr. Nihiser is suing the Secretary of the Army ("Secretary"), challenging the validity of the equal opportunity instruction (the "1992 Instruction") that the Board used in selecting him for involuntary separation. Defendant's Motion to Dismiss, Nov. 21, 2001, at 1.

The 1992 Instruction was in two enclosures of the MOI: Enclosure 1 ("Guidance") and Enclosure 2 ("Administrative Instructions"). Defendant's Motion to Dismiss, Nov. 21, 2001, at 3. The instructions state that the Army was firmly committed to providing equal opportunity for minority and female officers in all facets of their career development, utilization, and progression. *Id.* The "Guidance" advised the Board that its goal was to achieve a percentage of minority and female officers recommended for involuntary separation not greater than the rate for all officers in the zone of consideration. *Id.* The "Administrative Instructions" gave the Board and its members certain instructions for deciding whom to recommend for involuntary separation. *Id.* In adherence to the Army's commitment to providing equal opportunity and after careful deliberation, each member of the Board was directed to award each officer a numerical score to assess his or her "relative standing for retention." After this first phase, the officers were to be arranged from highest to lowest to form an "order of merit list" ("OML"). *Id.*

During the second phase, the Board was directed to review the OML to determine whether minorities or women were being recommended for involuntary separation at a higher rate than all officers, either overall or within a specific career field. Defendant's Motion to Dismiss, Nov. 21, 2001, at 4. If this answer was in the affirmative, the Board was directed to review the "files of [those] minority and/or female officers" tentatively recommended for involuntary separation to determine whether any of them had been "disadvantaged" by "past personal and institutional discrimination" as indicated by "disproportionately lower evaluation reports, assignments of lesser importance and responsibility, and lack of opportunity to attend career building schools." *Id.* If evidence of discrimination was found in any of these areas, a revote was ordered and the officer's standing was adjusted accordingly. *Id.*

Major Nihiser has been an Army officer since 1978 and obtained his current rank in 1990. Pursuant to the RIF, 1,947 officers were considered by the Board, including Major Nihiser. Finding that "adverse deviations" existed in the "selection rates of minority and female officers," the Board reviewed the files of those minority and female officers tentatively recommended for separation. *Id.* at 5. After completing a thorough review of the records, the Board revoted on at least one officer to achieve parity with the selection rate for all officers. A total of 244 officers were recommended to be involuntarily separated. *Id.* Major Nihiser was advised by letter on May 29, 1992 that he would be involuntarily separated effective January 1, 1993.

Because the standard operating procedure of the Board was to destroy or erase the OML within thirty days after the Board forwarded its recommendation for approval, the position of Major Nihiser or any other officer was not known either before or after the revoting took place. Therefore, the total number of officers, their race and gender that were revoted was not known. *Id.*

On October 27, 1992, Major Nihiser requested the Army Board for Correction of Military Records ("ABCMR") to reverse the recommendation of the Board or, in the alternative, for certain financial relief. Major Nihiser alleged among other things that "[t]here may be an issue of racial/gender discrimination associated with the [Board's] operations." *Id.* at 6. His request was denied by memorandum of ABCMR dated March 10, 1993. Major Nihiser was advised of the denial letter dated April 26, 1993, which he initialed on May 5, 1993. *Id.*

After waiting more than six years, Major Nihiser asked the ABCMR to reconsider its decision of March 10, 1993 by application, dated September 12, 1999. It was sent to the ABCMR on October 5, 1999. Relying on *Adarand Constructors v. Pena*, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) and *Sirmans v. Caldera*, 27 F.Supp.2d 248 (D.D.C. Nov.5, 1998), Major Nihiser argued that the Board made an "unconstitutional affirmative action' instruction." On April 5, 2001, the ABCMR denied the application.

Major Nihiser commenced this action on August 27, 2001. He challenges the constitutionality of the 1992 Instruction under the equal protection clause of the Fifth Amendment by arguing that the instruction gave preferential treatment to minority and female officers. He also challenges the validity of the two decisions by the ABCMR under the arbitrary and capricious standard of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Major Nihiser seeks relief in the form of nullification of his separation; that steps be taken to restore him to active duty;

and that the Secretary be enjoined from using classifications based on race or gender in future RIF boards, except insofar as the classifications meet the requirements of equal protection.

### ANALYSIS

I. Standard of Review

If a plaintiff has failed "to state a claim upon which relief can be granted," a court may grant a defendant's motion to dismiss. Fed.R.Civ.P. 12(b)(6); *see also Hishon v. King Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000). "On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction." *District of Columbia Retirement Bd. v. United States*, 657 F.Supp. 428, 431 (D.D.C.1987). In evaluating whether subject-matter jurisdiction exists, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), reversed on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. Fed. R.Civ.P. 12(b)(6); *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C.Cir.1996).

II. The Plaintiff's Action is Barred by the Statute of Limitations

■ With certain exceptions, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Under the "injury discovery rule," the limitation does not begin to run until the plaintiff discovers (or should have discovered) both the injury and pattern of the activity. *Rotella v. Wood*, 528 U.S. 549, 553, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

■ If a service member brings a direct challenge to his or her discharge, the six-year statute of limitations of § 2401(a) is the period of limitations that applies. *Lewis v. Sec'y of the Navy*, 1990 WL 454624 at *4 (D.D.C.1990); *see Kendall v. ABCMR*, 996 F.2d 362, 365 (D.C.Cir.1993); *Walters v. Sec'y of Defense*, 725 F.2d 107, 111 (D.C.Cir.1983), *reh. denied*, 737 F.2d 1038 (D.C.Cir.1984) (similarly). The same is true if the service member "seek[s] judicial review under the [APA] of an adverse decision by the service's administrative review board." *Lewis*, 1990 WL 454624 at *8; *accord Blassingame v. Sec'y of the Navy*, 811 F.2d 65, 71 (2d Cir.1987); *see Auction Co. of Am. v. FDIC*, 132 F.3d 746, 749 (D.C.Cir.1997), *reh. denied*, 141 F.3d 1198 (D.C.Cir.1998) (noting the general applicability of § 2401(a) to challenges under the APA).

A service member who seeks administrative review of his or her discharge and obtains an adverse decision from the administrative review board may apply for reconsideration of the adverse review board decision, as plaintiff did here. *See, e.g.*, 32 C.F.R. § 581.3(g)(4) (permitting reconsideration of ABCMR decisions). A split of authority exists with respect to the effect of such applications. Certain courts have held that suit must be filed within six

years of the adverse review board decision, regardless of whether, or when, an application for reconsideration is filed. *E.g., Soble v. ABCMR,* 1998 WL 60771 at *2 (N.D.Ill. Feb 5, 1998), *aff'd,* 151 F.3d 1033, 1998 WL 516770 (7th Cir.1998). Others have held that the period for filing suit runs from the date of reconsideration, provided that the application for reconsideration is filed within six years of the adverse review board decision. *E.g., Lewis,* 1990 WL 454624 at *8.

■ However, if an application is not filed within six years of the adverse review board decision, the period for filing suit does not run from the date of the decision on reconsideration, instead it runs from the date of the adverse review board decision. *Bethke v. Stetson,* 521 F.Supp. 488, 489–91 (N.D.Ga.1979). This rule prevents litigants from using the filing of applications for reconsideration to "delay the running of the six year statute of limitations indefinitely," thereby thwarting " 'those practical ends which are to be served by any limitation of the time within which an action must be brought.' " *Id.* at 490, 491 (quoting *Crown Coat Front Co. v. United States,* 386 U.S. 503, 517, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967)). As the court stated in *Pacyna v. Marsh,* 617 F.Supp. 101, 103 (W.D.N.Y.1984), "a plaintiff cannot revive his claim by applying to the ABCMR in 1981 and claiming that the 1982 decision revived a jurisdictional statute. To do this would provide a plaintiff to have the power to avoid the jurisdictional bar every time he submitted an application which was considered by the Board." To allow this would make 28 U.S.C. § 2401(a) meaningless.

In *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), the Court considered the same issue that arose in *Bethke* and *Pacyna* — that of limitation periods subject to indef-

inite renewal—and reached the same conclusion. In *Klehr,* the plaintiffs argued that the four-year period of limitations for civil RICO actions should run from the date of the last "predicate act" committed as part of the alleged "pattern of racketeering activity." 521 U.S. at 179, 117 S.Ct. 1984. Rejecting this argument, the Court held that acceptance of the argument would have "lengthen[ed] the limitations period dramatically," because "a series of predicate acts (including acts occurring at up to 10–year intervals) can continue indefinitely." 521 U.S. at 187, 117 S.Ct. 1984. Declining to "create a limitations period that is longer than Congress could have contemplated," the Court characterized the argument as one that would have "conflict[ed] with a basic objective—repose—that underlies limitations periods." *Id.; accord Rotella,* 528 U.S. at 554, 120 S.Ct. 1075 (discussing *Klehr* ).

■ In this case, plaintiff was advised by letter dated May 29, 1992 that the Board had recommended he be separated involuntarily effective January 1, 1993. To timely challenge that action, he would have had to file suit no later than May 29, 1998. Mr. Nihiser also argues that the statute of limitations to bring a direct challenge to the recommendation of the Board did not begin to run until January 1, 1993, the date of his actual separation. Even assuming that plaintiff's time to bring a direct challenge to the recommendation of the Board did not begin to run until January 1, 1993, his allotted six year limit would have run on January 1, 1999. He did not commence this action until August 27, 2001, more than six years later.

Instead, Mr. Nihiser filed for relief to the ABCMR on March 10, 1993, and was informed of his denial on May 5, 1993. To timely challenge this decision, he would have had to file suit by May 5, 1999. On

October 5, 1999, more than six years later, Mr. Nihiser asked the ABCMR to reconsider its 1993 decision. But because his petition for reconsideration was filed more than six years after the ABCMR's initial decision, it does not delay the running of the six year statute of limitations.[1] *See Bethke v. Stetson,* 521 F.Supp. 488, 489–91 (N.D.Ga.1979); *Pacyna v. Marsh,* 617 F.Supp. 101, 103 (W.D.N.Y.1984).

Plaintiff also unpersuasively argues that *Adarand v. Pena,* 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) affects the statute of limitation in this case. In *Adarand,* the Supreme Court held that strict scrutiny was the standard to use when evaluating race-based affirmative action programs. *Id.* Plaintiff argues that *Adarand* was not decided until June 1995 and its implications did not become apparent until some time after that. Therefore, the doctrine of equitable tolling precludes this action from being deemed untimely. This argument is unconvincing. Even if this decision did toll the six year limitation, the plaintiff would still not have made it under the six year window, since he commenced this suit August 27, 2001.

■ The plaintiff's argument is also without merit. "The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumcised instances." *Smith–Haynie v. District of Columbia,* 155 F.3d 575, 579–80 (D.C.Cir.1998) (quoting *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988)). Equitable tolling is a doctrine, therefore, "which is to be employed 'only sparingly' in any event." *United States v. Cicero,* 214 F.3d 199, 204 (D.C.Cir.2000) (quoting *Irwin v. Dep't of Vets. Affs.,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435(1990)).

That the law has changed or been reinterpreted is not one of the "extraordinary and carefully circumscribed instances" that makes the applications of equitable tolling appropriate. A case that makes this point

---

1. Although the complaint is unclear on this point, Nihiser appears to challenge the 1999 decision by the ABCMR not to disturb the results of the 1992 RIF. Assuming that Nihiser is making such a claim under the Administrative Procedure Act, it would fail for the following reasons. First, Nihiser may not use the 1999 request to sidestep the six year statute of limitations. *See Bethke v. Stetson,* 521 F.Supp. 488, 489–91 (N.D.Ga.1979); *Pacyna v. Marsh,* 617 F.Supp. 101, 103 (W.D.N.Y. 1984); *See also Soble v. Army Board of Correction of Military Records,* 151 F.3d 1033, 1998 WL 516770 (7th Cir.1998) (Several circuits have found that claims seeking review of a correction board decision accrue at the time of the Board's initial decision.). Secondly, the Army's decision to review the results of the 1992 RIF board for a second time appears to be committed exclusively to the discretion of the Army. *Cf. Chaney v. Heckler,* 724 F.2d 1030 (1984); *Citizens of Overton Park Inc., v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Finally, even assuming the Army's 1999 decision was reviewable under the APA, the Court would easily uphold it. The RIF Board made its decision in 1992, and the ABCMR reviewed that decision in 1993. After waiting more than six years, Mr. Nihiser again requested that the ABCMR review the decision of the 1992 RIF Board. Thus, the district court's review of the ABCMR's decision is quite limited. Such decisions can be set aside only "if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586, (1983); *Robbins v. United States,* 29 Fed.Cl. 717, 725 (1993) ("The function of the court is not to reweigh the evidence presented to the ABCMR. Rather, the court is charged with determining 'whether the conclusion being reviewed is supported by substantial evidence.' ") (quoting *Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir. 1983)).

In this case, the action of the 1999 ABCMR provides the repose envisioned by the six year statute of limitations and cannot be found to be arbitrary or capricious or unsupported by substantial evidence.

clear is *Catawba Indian Tribe of South Carolina v. United States,* 982 F.2d 1564 (Fed.Cir.), *cert. denied,* 509 U.S. 904, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993). In *Catawba,* the plaintiff argued that an action commenced in 1990 was not untimely because the plaintiff did not learn that he had been "damaged" by the government until the Supreme Court construed the Catawba Indian Tribe Division of Assets Act, Pub.L. No. 86–322, 73 Stat. 592 (1959), in *South Carolina v. Catawba Indian Tribe,* 476 U.S. 498, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986). Holding that the action ought to have been brought within six years of the effective date of the aforementioned statute, and further holding that the untimeliness of the action was not cured by the doctrine of equitable tolling, the court said, "[A] traditional ground for equitable tolling of a statute of limitations is based on the avoidance of penalizing a plaintiff simply because under the circumstances plaintiff did not and could have not known of the facts upon which the claim is based." 982 F.2d at 1572. The court further stated, "But in this case before us all the relevant facts were known. It was the meaning of the law that was misunderstood." *Id.*

Another case similar to *Catawba* is *United States ex rel. Collins v. Neal,* 2000 WL 1262912 (N.D.Ill. Sep.1, 2000). In *Collins,* the petitioner argued that equitable tolling excused the untimely filing of his petition for habeas corpus because he did not learn until after the statute of limitations had run that the limitations period for the filing of such petitions had been shortened by the state legislature. Holding that "ignorance of the change in the law does not constitute 'extraordinary circumstances' sufficient to permit equitable tolling," the court said: "A claim of excusable neglect or ignorance of the law is ordinarily not sufficient to warrant tolling." 2000 WL 1262912 at *1.

A third case emphasizing the same point is *United States ex rel. Bishop v. Cowan,* 2000 WL 1898467 (N.D.Ill. Dec 22, 2000). In *Bishop,* the petitioner argued that equitable tolling excused the late filing of his petition for habeas corpus because he had not learned that Congress had enacted a statute of limitations for the filing of such petitions until after the statute had run. Rejecting this argument, the court said: "[E]quitable tolling applies when a person does not learn the facts upon which he bases his claim, and petitioner knew the relevant facts in 1994." 2000 WL 1898467 at *2 (emphasis in the original).

In this case, plaintiff was advised by letter dated May 29, 1992, that the Board had recommended involuntary separation. He was advised by a letter that he initialed on May 5, 1993, that the ABCMR had denied his application for review. As a result, he knew all of the facts relevant to his case no later than May 5, 1993. Nonetheless, he did not apply for his reconsideration of the decision until October 5, 1999 and did not commence this lawsuit until August 27, 2001. Because he did not commence this action within six years of the date of his separation from the Army or reapply for reconsideration of the ABCMR decision until more than six years after the date of that decision, the case is untimely.

Admittedly, the law of affirmative action changed substantially when *Adarand* was decided. *See Adarand,* 515 U.S. at 227, 115 S.Ct. 2097 (overruling *Metro Broadcasting v. FCC,* 497 U.S. 547, 110 S.Ct. 2997, 111 L.Ed.2d 445 (1990)). This change does not cause equitable tolling to mitigate the untimeliness of this case. Here, as in the cases discussed above, "all the relevant facts were known" to the plaintiff before *Adarand* was decided; "[i]t was the meaning of the law that was mis-

understood." See *Catawba*, 982 F.2d at 1572. Equitable tolling is thus inapplicable to this case, and the case must therefore be dismissed.

Finally, the plaintiff took another look at his involuntary separation when the decision of *Sirmans v. Caldera*, 27 F.Supp.2d 248 (D.D.C. Nov.5, 1998) was decided by this Court. In *Sirmans*, the court granted two officers, who challenged the affirmative action procedures of the Army's promotion board instruction, limited discovery and a continuance. Because *Sirmans* was decided on November 5, 1998, plaintiff had six months before the deadline of May 5, 1999 to take appropriate action. He did not do so. Though, the plaintiff somewhat relies on this case, the decision had no effect on extending the six year statute of limitations.

## CONCLUSION

For the reasons stated herein, the Court grants defendant's motion to dismiss. In particular, the Court finds that Mr. Nihiser failed to file suit within the prescribed six year period. A separate order consistent with this memorandum opinion will issue this date.