Johnnie E. **GREEN**, Appellant,

v.

*Hon. Thomas E. **WHITE**, Secretary of the Army.

*(Pursuant to F.R.A.P. 43(c)).

No. 02–1852.

United States Court of Appeals, Third Circuit.

Argued Nov. 5, 2002.

Filed Feb. 10, 2003.

---

Thomas J. Reed (Argued), Widener University School of Law, Delaware Volunteer Legal Services, Inc., Veterans Assistance Program, Wilmington, DE, for Appellant.

Major Scott E. Reid (Argued), Joseph Fetterman, Staff Judge Advocate General, Office of Judge Advocate, Department of the Army, Arlington, VA, Christopher J. Christie, United States Attorney, Dorothy Donnelly, Assistant United States Attorney, United State's Attorney's Office, Trenton, NJ, for Appellee.

Before BECKER, Chief Judge, McKEE and HILL,* Circuit Judges.

---

* The Honorable James C. Hill, United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

## OPINION OF THE COURT

BECKER, Chief Judge.

This is an action by plaintiff Johnnie E. Green against Army Secretary Thomas E. White ("the Secretary") seeking correction of Green's military records. Because the District Court erred in finding that Green's suit is time-barred, we reverse the order of the District Court dismissing the suit and remand for further proceedings.

## I.

The case stems from Green's 1950 discharge from the United States Army. Green entered Army service in January 1949 and was honorably discharged in December of the same year. He re-enlisted and served from December 1949 to July 1950. On July 7, 1950 Green was reported absent without official leave ("AWOL") as of the previous day. He returned to duty on July 8th. As a result of his going AWOL, the Army dropped Green in rank and, on July 31, 1950, gave him an undesirable discharge.

Green asserts that his discharge "hearing" was perfunctory. He met with his First Sergeant and a Second Lieutenant. The Sergeant told Green he had "too many delinquent reports," and asked him how he pleaded. Green responded that he pleaded "guilty with an explanation," and he was then told to wait outside for a decision. When Green was called back in ten minutes later, the Sergeant told him that he had "pleaded guilty to being a delinquent person. And it is the decision of this Board that you be discharged, as an Undesirable Person." The Army duly gave Green a "blue" discharge, which is a less-than-honorable discharge that deprives Green of most veterans' rights.

Thirty-one years later, in 1981, Green applied to the Army Discharge Review Board ("ADRB") for review of his discharge and requested that his "Undesirable Discharge" be upgraded to "Honorable." The Review Board rejected Green's application and he then applied to the Army Board for Correction of Military Records ("ABCMR") for review of this decision. In 1982 the ABCMR upheld the ADRB's decision. Green filed petitions for reconsideration of the ABCMR's ruling in 1983 and 1986 and was rejected on both occasions for a failure to submit new evidence.

In May 1999, Green again filed a petition with the ABCMR to re-open his discharge review case. This application for reconsideration was based on the administrative record and an affidavit in which Green, who is African–American, asserted that his discharge had been to some extent racially motivated. In his affidavit Green stated that he "believe[d] that my First Sergeant singled me out for special treatment on account of my race. I had never been punished for any military offense up to 31 July 1950, and had only one day's time lost due to my AWOL." Initially, the ABCMR refused to re-open Green's case on the grounds that "no new evidence had been presented that the ABCMR had not previously considered" and that his records could not be found because they likely had been destroyed in a 1973 fire at the National Military Personnel Records Center. At this point, Green appealed to the Secretary, who sent Green's case back to the ABCMR for consideration. The ABCMR then decided to "consider[ ] the new evidence," appeared to re-open the proceedings, and denied Green's application on the merits.

Green contends that he raised the issue of racism for the first time in his 1999 application for reconsideration. The Secretary disagrees, and asserts that Green had raised the racism issue in his 1982 petition to the ABMCR. It appears that

the Secretary has the better of this argument as Green's own 1999 ABMCR petition stated that "[h]e based his first [1982] petition on issues relating to racial discrimination." Still, as discussed below, in its October 19, 2000 decision, the ABCMR appeared to consider Green's affidavit and other supporting materials as "new evidence."

Green next filed suit in the District Court for the District of New Jersey, asserting that the ABCMR had acted "arbitrarily and capriciously" in denying his claim. He brought this claim under, *inter alia*, 5 U.S.C. § 701 (the Administrative Procedure Act), 28 U.S.C. § 1651 (the All Writs Act), and 28 U.S.C. § 1346 (the Tucker Act). The Army moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and Green moved for summary judgment under Federal Rule of Civil Procedure 56. The District Court denied Green's motion and granted the Army's motion to dismiss. The court reasoned that the six-year statute of limitations for civil actions against the government mandated by 28 U.S.C. § 2401(a) had begun to run in 1982 when the ABCMR first rejected Green's application, and that therefore Green's action was time-barred.[1] Green appealed.[2]

## II.

■ 28 U.S.C. § 2401(a) provides for a six-year statute of limitations on civil actions against the United States, measured from the date that "the right of action first accrues." Under this court's decision in *Dougherty v. U.S. Navy Board for Correction of Naval Records*, 784 F.2d 499, 501 (3rd Cir.1986), in an action for correction of military records, the claim first accrues when the BCMR "issue[s] its final decision," not when the service person is discharged. The central question here is when did Green's claim accrue, or, put another way, what counts as a final administrative determination in this context? The Secretary asserts that Green's claim accrued in 1982 when the BCMR first rejected Green's application. Green contends that it accrued in 2000 when the Board re-opened his case and rejected his request for reconsideration on the merits. We agree with Green.

■ Green raises two arguments in his attempt to get past the § 2401(a) statute of limitations. First, he posits that because the ADRB improperly heard Green's petition in 1981, the ABCMR's 1982 decision was a "nullity." We agree that the ADRB should not have taken Green's case

---

**1.** This reasoning applies both to Green's Administrative Procedures Act and Tucker Act claims. Green argues that his claim under 28 USC § 651 is not limited by the six-year statute of limitations. Green requested that the District Court issue a writ "in the nature of a writ of coram nobis, directing the Secretary of the Army to change" Green's discharge status. Fed.R.Civ.P. 60(b) abolishes the writ of coram nobis in civil cases, and so we consider Green's claim under Fed.R.Civ.P. 60(b) instead. 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2867 at 395 (2d ed.1995). Green appears to be asking us to apply 60(b)(6), which allows a court to grant relief from judgment for "any other reason justifying relief from the operation of the

judgment." We have held that the remedy provided by rule 60(b)(6) is "extraordinary, and special circumstances must justify granting relief under it." *Page v. Schweiker*, 786 F.2d 150, 158 (3rd Cir.1986). We do not believe that such "extraordinary and special circumstances" exist in this case and so we reject Green's claim under FRCP 60(b)(6).

**2.** The District Court had jurisdiction under 28 USC § 1331 and this court has jurisdiction under 28 USC § 1291. We exercise plenary review over a district court's dismissal for failure to state a claim. *See Ditri v. Coldwell Banker Residential Affiliates*, 954 F.2d 869, 871 (3d Cir.1992).

in 1981. 10 U.S.C. § 1553(a) states that the ADRB may only entertain a claim if the "motion or request for review [was] made within 15 years after the date of the discharge or dismissal." Green made his request for review 31 years after his discharge, and therefore the ADRB was not empowered to hear his complaint. It does not follow, however, that the ABCMR's decision was a nullity. Green's argument is that the ABCMR cannot review a decision on a claim that should never have been heard in the first place. This, however, ignores the fact that the ABCMR's function is not limited to review of ADRB decisions. Rather, the ABCMR had the authority to conduct a *de novo* review of Green's original discharge, regardless of the propriety of the ADRB decision.[3] Nothing in the regulations governing the ABCMR states that the Board may only act in review of ADRB decisions. Indeed, in this case the ABCMR decision specifically noted that only "some of the information" in the record the Board considered "came from the applicant's assertions in connection with his previous application to the ADRB." Because the ABCMR had the authority to act on Green's case despite the fact that the ADRB's 1981 decision was improper, the ABCMR's 1982 decision was not a nullity.

■ Green also urges that even if the ABCMR's first decision was not a nullity, the final agency action in this case oc-curred in 2000, when the ABCMR re-opened Green's case and denied his petition for reconsideration, not in 1982. This Court has yet to issue a ruling on the proper impact of a petition to the ABCMR for reconsideration on the § 2401(a) statute of limitations. Among other courts, a "split of authority" has developed. *Nihiser v. White,* 211 F.Supp.2d 125, 128–29 (D.D.C.2002).

At least one court seems to have left open the possibility that a rejection of a petition for reconsideration can serve as the f§ 2401(a) statute of limitations period regardless of how long after the original petition it was filed. *See Smalls v. United States,* 87 F.Supp.2d 1055 (D.Haw.2000).[4] Another approach to the problem was adopted in *Lewis v. Secretary of the Navy,* 1990 WL 454624 (D.D.C.1990), in which the District Court held that the "final administrative determination" in this context—and the moment when the claim accrues—is the BCMR's action on a claimant's motion for reconsideration, as long as that motion is filed within 6 years of the most recent application to the BCMR. Under this framework, it appears possible that a claimant could repeatedly toll the statute of limitations by submitting a series of motions for reconsideration.

A third and final option is presented in *Soble v. Army Board of Correction of Mil-*

---

**3.** While 10 U.S.C. § 1552(b) states that the ABCMR may only correct a military record if the claimant "files a request for the correction within three years after he discovers the error or injustice," unlike the ADRB's time-bar, the ABCMR "may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice." Therefore, the ABCMR was empowered to entertain Green's petition in 1999 despite the fact that it was filed eighteen years after the ADRB decision and forty-nine years after Green's discharge.

**4.** This decision was appealed to the Ninth Circuit Court of Appeals, which remanded the case for clarification of whether the district court "exercised jurisdiction under 28 U.S.C. § 1331 and the waiver of sovereign immunity in S 702 of the Administrative Procedure Act, or under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), or under both." *Smalls v. England,* 50 Fed. Appx. 379 (9th Cir.2002).

*itary Records,* 151 F.3d 1033, 1998 U.S.App. LEXIS 17790 (7th Cir.1998), in which the Court held that the § 2401(a) six-year time limit begins to run with the first ABCMR decision and is unaffected by subsequent motions for reconsideration. In that case, Soble applied to the ABCMR in August 1975 seeking a retroactive promotion to First Lieutenant. His request was denied in March 1977 because the Board found that Soble had submitted insufficient evidence to show that there had been a material error or injustice in the Army's decision not to promote him. Soble filed a second application with the Board in December 1978, and included what he asserted was a piece of new evidence. The BCMR treated the application as a request for reconsideration and denied it. Soble applied again in August 1981 and April 1994 and was denied both times. He filed a claim in federal court in September 1997, asserting that he should have been promoted. The district court held that Soble's claim was time-barred and it dismissed the case. The Seventh Circuit upheld the district court's decision, ruling that Soble's claim that the ABCMR had erred in denying his request for a promotion "accrued[ ] at the time of the Board's decision," by which the court meant the Board's first decision. *Id.* at 1033.

The existing cases therefore seem to offer three ways to approach this problem: (1) any time a plaintiff files an application for reconsideration with the ABCMR, the statute is tolled and a new six-year period begins to run; (2) an application for reconsideration tolls the statute and restarts the six-year time limit only if it is filed within six years of the most recent administrative decision in the case; or (3) the statute begins to run with the initial Board decision in the case and is unaffected by petitions for reconsideration.

Clearly, the crucial question here is the effect of motions for reconsideration on the § 2401(a) six-year time bar. In *Interstate Commerce Commission v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1986), the Supreme Court held that the language of 5 U.S.C. § 704, which reads "Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for … any form of reconsiderations …," has "long been construed by this and other courts merely to relieve parties from the requirement of petitioning for rehearing before seeking judicial review (unless, of course, specifically required to do so by statute), but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." *Id.* at 284–85, 107 S.Ct. 2360 (citations omitted). In the same opinion, the Court also drew a crucial distinction between petitions for reconsideration which merely allege "material error" and those which allege "new evidence" or "changed circumstances." The Court observed that

… all of our cases entertaining review of a refusal to reopen appear to have involved petitions alleging "new evidence" or "changed circumstances" that rendered the agency's original order inappropriate. We know of no case in which we have reviewed the denial of a petition to reopen based upon no more than "material error" in the original agency decision. There is good reason for distinguishing between the two. If review of denial to reopen for new evidence or changed circumstances is unavailable, the petitioner will have been deprived of all opportunity for judicial consideration … of facts which, through no fault of his own, the original proceeding did not contain. By contrast, where

no new data but only "material error" has been put forward as the basis for reopening, an appeal places before the courts precisely the same substance that could have been brought there by appeal from the original order.

*Id.* at 278–79, 107 S.Ct. 2360 (citations omitted).

In sum, the Court determined that "where a party petitions an agency for reconsideration on the ground of 'material error,' *i.e.*, on the same record that was before the agency when it rendered its original decision, 'an order which merely denies rehearing of ... [the prior] order is not itself reviewable.'" *Id.* at 280, 107 S.Ct. 2360 (quoting *Microwave Communications Inc. v. FCC*, 515 F.2d 385, 169 U.S.App. D.C. 154, 156 (1974)).[5] The Court's decision made clear that this non-reviewability was a "tradition that 5 U.S.C.

§ 701(a)(2) was meant to preserve."[6] *Id.* at 282, 107 S.Ct. 2360.

Applying this logic to the case at bar, we conclude that any petition for rehearing to the ABCMR which does not include "new evidence" or reflect some "changed circumstances" does not re-start the six-year statute of limitations. If, however, the ABCMR re-opens a proceeding and rules upon a petition that does contain such new evidence, such a ruling will constitute a final agency action and will re-start the six-year time limit. This will be the case even if the petition is filed more than six years after the original ABCMR decision in a petitioner's case.[7] This approach has two distinct advantages. First, it prevents plaintiffs from circumventing the spirit of § 2401(a) by "plac[ing] before the court precisely the same substance that could have been brought there by appeal from

---

**5.** We recognize that Brotherhood of Locomotive Engineers is factually distinct from the case at bar in a number of respects. First, that case involved a petition to the Interstate Commerce Commission, judicial review of which is governed by the Hobbs Act, 28 U.S.C. § 2341 *et seq.* Second, the question in Brotherhood of Locomotive Engineers was not timeliness under § 2401(a), but rather whether the ICC's refusal to reopen a proceeding was reviewable. Third, that case involved a formal agency adjudication, while the case at bar involves an informal adjudication. We believe, however, that these contextual differences do not reduce the force or applicability of the Supreme Court's reasoning to the case before us.

**6.** The Court observed that it is the "Administrative Procedure Act (APA) that codifies the nature and attributes of judicial review, including the traditional principle of its unavailability 'to the extent that ... agency action is committed to agency discretion by law.'" *Brotherhood of Locomotive Engineers*, 482 U.S. at 282, 107 S.Ct. 2360 (quoting 5 U.S.C. § 701(a)(2)).

**7.** We note that our discussion here deals only with the question of the circumstances under

which a petition for reconsideration re-starts the six-year time bar period and not with whether or when such a petition will temporarily toll this period. While the Supreme Court has held that "the filing of a timely petition for agency reconsideration [ ] extends the time for appealing from the original decision," *Brotherhood of Locomotive Engineers*, 482 U.S. at 280, 107 S.Ct. 2360, it is not clear what would constitute a "timely" petition under the ABCMR regulations. The regulations in effect when Green filed his petition for reconsideration stated in the section entitled "Reconsideration" that "After final adjudication, further consideration will be granted only upon presentation by the applicant of newly discovered relevant evidence not previously considered by the Board and then only upon recommendation of the Board and approval by the Secretary of the Army." At all events, whatever tolling may have occurred as a result of the filing of timely petitions for reconsideration in this case would not change the outcome because the § 2401(a) six-year time bar period was re-started when the ABCMR re-opened Green's case in 2000. We therefore need not decide if Green's earlier petitions for reconsideration in 1983 and 1986 temporarily tolled the six-year time period during their pendency.

the original order." *Brotherhood of Loco-motive Engineers*, 482 U.S. at 279, 107 S.Ct. 2360; *see also Nihiser v. White*, 211 F.Supp.2d 125, 129 (D.D.C.2002). It is for this reason that we reject the *Smalls* approach, because it would pave the way for a regime in which a plaintiff can indefinitely toll the statute of limitations, and in this way would swallow the limits established by 28 U.S.C. § 2401(a). Second, it guarantees that a plaintiff who can allege some new evidence or changed circumstances will not "have been deprived of all opportunity for judicial consideration ... of facts which, through no fault of his own, the original proceeding did not contain." *Id.*

This conclusion is buttressed by the Court of Appeals for the District of Columbia's decision in *Sendra Corporation v. Magaw*, 111 F.3d 162 (D.C.Cir.1997). That case involved repeated applications to the Bureau of Alcohol, Tobacco, and Firearms to register certain weapons parts as "machine guns." After echoing the Supreme Court's conclusion that agency decisions on requests for reconsideration alleging only material error are not reviewable, the Court concluded that "[i]f for any reason the agency reopens a matter and, after reconsideration, issues a new and final order, that order is reviewable on its merits ...." *Id.* at 167. The Court cautioned, however, that even if "the agency discusses the merits at length when it denies a request for reconsideration [that] does not necessarily mean the agency has reopened the proceedings." *Id.* Indeed, "[o]nly 'when the agency has clearly stated or otherwise demonstrated,' that it has re-opened the proceeding will the resulting agency decision be considered a new final order subject to judicial review under the usual standards." *Id.* (citations omitted).

We note that our decision here is consistent with both the Court of Appeals for the

Seventh Circuit's holding in *Soble* and with the decision of the District Court for the District of Columbia in *Lewis*. In *Soble*, the plaintiff filed four requests for reconsideration of the original ABCMR decision. None of these requests alleged any new evidence or changed circumstances, however, so the Court properly found that the final administrative decision in the case was the initial ABCMR ruling, not the Board's rejection of Soble's petitions for reconsideration. In *Lewis*, the BCNR rejected the plaintiff's initial petition on April 3, 1984. The plaintiff filed for reconsideration and the BCNR re-opened the case on November 24, 1987. As a result of its reconsideration, the Board altered its original holding in the case. The fact that the Board re-opened the case (presumably, although it is not clear from the facts, on the basis of some new evidence) re-started the six-year time period and therefore the district court was able to hear Lewis' case despite the fact that he filed suit on May 18, 1989, more than six years after the initial Board decision in his case.

■ In the case at bar, it appears from the ABCMR's October 19, 2000 Memorandum of Consideration that the Board treated Green's petition as if it contained new evidence and re-opened the proceedings in Green's case. The Memorandum notes that initially the "staff of the ABCMR reviewed" the material Green submitted and "determined that no new evidence had been presented that the ABCMR had not previously considered." The Memorandum goes on to state, however, that after repeated entreaties on the part of Green and his counsel "requesting that the ABCMR reconsider the 4 May 1999 application and new evidence attached," the "Board hereby considers the new evidence as follows in these proceedings." The Memorandum then goes on to reject Green's application on the merits. This

decision seems distinctly different from one in which the Board rejects a petition for reconsideration out-of-hand for a failure to present new evidence. Rather, the Board appears to have re-opened the proceedings and considered Green's new evidence.

On the basis of the rule announced above, the ABCMR's October 19, 2000 decision in Green's case was a final administrative determination which re-started the six-year tope period of § 2401(a). Therefore, the District Court erred in holding that Green's suit was time-barred. The judgment of the District Court will be reversed and the case remanded for further proceedings.