**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1736
_____

DAVID L. BATTLE,
                                        Appellant
                    v.

SECRETARY UNITED STATES DEPARTMENT OF NAVY; DEPARTMENT OF
THE NAVY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-00023)
District Judge: Alan N. Bloch
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 2, 2018
_____

Before: CHAGARES, JORDAN, and VANASKIE, *Circuit Judges*

(Opinion Filed: December 28, 2018)
_____

OPINION[*]
_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

VANASKIE, *Circuit Judge*.

This case arises from Petitioner David A. Battle's unsuccessful attempts to have his discharge status designation of "other than honorable" changed to "honorable" following his service in the United States Marine Corps from 1973 to 1976. Battle's first unsuccessful attempt concluded in 1978. Thirty-seven years later, in 2015, Battle moved for reconsideration of the 1978 decision issued by the Board for Correction of Naval Records ("BCNR" or "Board"). His reconsideration motion was denied in 2016, and Battle then commenced an action to overturn that adverse decision. The District Court found that Battle's case was time-barred by 28 U.S.C. § 2401(a), which, in pertinent part, provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Battle appeals, arguing that the denial of this reconsideration motion in 2016 reset the limitations period so that his action was timely. We disagree. Therefore, we will affirm the District Court's dismissal.

## I.  BACKGROUND

Battle enlisted in the Marine Corps in 1973. During the term of his enlistment, he received a number of misconduct charges. As a result, he had been recommended for "administrative separation," *i.e.*, "other than honorable" discharge.[1] However, he was not immediately discharged at the end of his term of enlistment, and instead remained in

---

[1] Battle explains that an "other than honorable" discharge is an unfavorable administrative discharge, and that, although they are often used interchangeably, a "dishonorable" or "bad conduct" discharge in fact refers to discharges "only assigned by a sentence of court-martial." (Appellant's Br. 4).

service pending a separate disability discharge proceeding instituted on his behalf following a leg injury. While the disability discharge process was underway, an Assistant Judge Advocate General ("AJAG") indicated that no action should be taken with respect to Battle's disability discharge and instead recommended that Battle "be discharged under other provisions of law," *i.e.*, via administrative separation. (App. 33). Accordingly, Battle was administratively and involuntarily separated in May 1976, and therefore has an "other than honorable" discharge status. Battle contends that the AJAG lacked the authority to withhold approval and final adjudication of a disability discharge under the Navy's regulations at that time. Therefore, after he was discharged as "other than honorable" in 1976, Battle moved for correction of his military records in the form of a discharge upgrade, which the BCNR denied in 1978.

Thirty-seven years later, in 2015, Battle moved for reconsideration of the 1978 decision and asked the BCNR to reopen his case based on new arguments and/or evidence. The BCNR denied his request in 2016. As a result, Battle sought judicial review of the BCNR's 2016 decision under 5 U.S.C. § 702, alleging that the BCNR "failed to correct the error and injustice in his record." (App. 7). As relevant to this appeal, the District Court concluded that the BCNR's 1978 denial was the operative, "final decision" for purposes of calculating the six-year statute of limitations under § 2401(a). (App. 21). Therefore, the District Court found that Battle did not commence his action within the requisite time frame and granted the Government's motion to dismiss.[2]

---

[2] Although the Government brought its motion to dismiss pursuant to Rule 12(b)(6), the District Court treated the dismissal as one for lack of subject matter

3

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.  We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise "plenary review" over a District Court's grant of a motion to dismiss for want of jurisdiction under Rule 12(b)(1). *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citation omitted).

## III.    DISCUSSION

The parties agree on the framework and relevant law governing the jurisdictional question in this case.  Pursuant to 10 U.S.C. § 1552, the Secretary of the United States Navy "may correct any military record of the [Navy] when the Secretary considers it necessary to correct an error or remove an injustice."  § 1552(a)(1).  Additionally, § 1552(a)(1) authorizes the Secretary to establish boards like the BCNR to review and potentially correct Navy records, including those of the Marine Corps.  *Id.*; 32 C.F.R. § 723.2(a), (b).  The BCNR thus has the ability to consider motions for reconsideration, such as Battle's, to correct a military record by upgrading an "other than honorable" discharge designation.  *See* 32 C.F.R. §§ 723.2(a), 723.9.

If a Marine Corps member receives an adverse decision from the BCNR, he may then seek judicial review of the decision under the Administrative Procedure Act, 5

---

jurisdiction pursuant to Rule 12(b)(1) because it concluded that a statute of limitations defense under § 2401(a) is jurisdictional in nature. (App. 9).  Although the District Court noted that it is unsettled whether § 2401(a)'s statute of limitations is jurisdictional and thus expressed hesitancy to treat it as such, the District Court properly treated the motion to dismiss as one for lack of subject matter jurisdiction pursuant to our decision in *United States v. Sams*, 21 F.2d 421, 428 (3d Cir. 1975) (concluding that failure to comply with § 2401(a) deprived the District Court of jurisdiction).

4

U.S.C. §§ 701–706 *et seq.* Actions seeking judicial review of a BCNR decision, such as the one at issue, are generally governed by the six-year statute of limitations set forth in § 2401(a). *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 626–27 (2018). Thus, both Battle and the Government agree that, in order for Battle's action to be timely, he must have commenced it within six years from the date that "'the right of action first accrue[d].'" *Green v. White*, 319 F.3d 560, 563 (3d Cir. 2003) (quoting § 2401(a)). Under § 2401(a), a right of action accrues when the BCNR issues a "final decision." *Dougherty v. U.S. Navy Bd. for Correction of Naval Records*, 784 F.2d 499, 501 (3d. Cir. 1986).

As relevant here, the heart of this appeal centers on which of the BCNR adverse decisions—the 1978 decision or the 2016 decision—constitutes the operative "final decision" from which the six-year limitations period began to run. In that regard, it is undisputed that the 1978 BCNR decision denying Battle's application to upgrade his discharge status constitutes a "final decision" for purposes of triggering the statute of limitations under § 2401(a). What is at issue here is whether the 2016 decision restarted the limitations period.

The BCNR may accept, at any time, petitions for reconsideration and reopen an applicant's case. *See Green*, 319 F.3d at 565; 32 C.F.R. § 723.9. Notwithstanding the existence of prior "final decisions," if the BCNR reopens a case and issues a denial on the merits, it creates a new "final decision" for purposes of § 2401(a), thereby resetting the statute of limitations clock. *See Green*, 319 F.3d at 565–66.

5

For example, in *Green*, we made clear that a petition for reconsideration can constitute a new, judicially reviewable "final decision" for purposes of restarting § 2401(a)'s six-year limitation period if the BCNR reopens the action based on a finding (1) of "new evidence" or (2) that the petition "reflect[s] some 'changed circumstances.'" *Id.* at 566. In so finding, however, we emphasized that only a BCNR decision which definitively "reopens" and considers a case based on either criterion may be considered a "final decision." *Id.* at 567. Even if the BCNR "'discusses the merits at length when it denies a request for reconsideration,'" that does not mean, for purposes of judicial review, that the BCNR has reopened the case and issued a "final decision" on the matter for purposes of restarting § 2401(a)'s statute of limitations. *Id.* (quoting *Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997)). Rather, the BCNR's decision will only be considered "final" if it unambiguously indicates or "otherwise demonstrate[s]" that the Board has reopened the proceeding. *Id.* (quoting *Sendra Corp.*, 111 F.3d at 167).

Here, the parties dispute whether the BCNR's 2016 adverse decision can properly be considered a "final decision" for statute of limitations purposes. As the District Court noted, the BCNR decision is not a "model of clarity." (App. 20). For example, the BCNR's 2016 decision concluded that "new information" was presented to the Board that "d[id] not warrant relief," and that Battle's "request ha[d] been denied," arguably suggesting that the BCNR had indeed reopened Battle's case on the basis of "new information" that it found meritless. (App. 22). On the other hand, the decision also stated that Battle was "entitled to have the Board *reconsider its decision based upon submission of new evidence*," which, the Board explained, means "*new evidence not*

6

*previously considered by the Board prior to making its decision in this case*," arguably implying that the BCNR had in fact *not* reopened the matter because Battle had failed to present "new evidence" or some "changed circumstances." (App. 23) (emphasis added). Thus, given that the language was ambiguous, the District Court concluded that the BCNR had not "clearly" reopened the case.

We agree. In *Green*, we noted that "'only when the agency has *clearly stated* or otherwise demonstrated that it has reopened the proceeding will the resulting agency decision be considered a new final order subject to judicial review[.]'" 319 F.3d at 567 (emphasis added) (internal punctuation omitted) (quoting *Sendra Corp.*, 111 F.3d at 167) (explaining that, "unless [an] agency *clearly* states or indicates that it has reopened the matter, its refusal of a request for reconsideration will be treated as simply that" (citation and internal quotation marks omitted)). This is true even if the reviewing agency discussed the merits of the underlying action, as was the case here. *See, e.g., ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 280 (1987) ("It is irrelevant that the [agency]'s order refusing reconsideration discussed the merits of the unions' claims at length. Where the [agency]'s formal disposition is to deny reconsideration, and where it makes no alteration in the underlying order, [the court] will not undertake an inquiry into whether reconsideration 'in fact' occurred."). Furthermore, an agency's explanation for "affirming a prior denial" does not reopen proceedings and constitute "a new, judicially-reviewable decision." *Sendra Corp.*, 111 F.3d at 167 (citation and internal quotation marks omitted). Accordingly, the fact that the BCNR here discussed the merits of

7

Battle's case or provided an explanation why it was affirming the 1978 BCNR's decision is not dispositive in the "final decision" inquiry.

A comparison of the language in the decision at issue in *Green* and the language employed by the BCNR here buttresses our conclusion. In *Green*, we determined that the Board had appeared to reopen the proceedings at issue because the language of the decision provided that the Board had reviewed "Green['s] material and '*determined that no new evidence had been presented* that the [Board] had not previously considered,'" which we concluded was sufficiently unambiguous to demonstrate that the Board had reopened and considered Green's case on the merits. *Green*, 319 F.3d at 567 (emphasis added). In contrast, the conflicting language in the BCNR's 2016 decision is far from clear. Thus, because the BCNR here did not issue a clear, unambiguous statement that it was reopening Battle's case, we find that the District Court did not err in finding that the BCNR's 2016 decision did not reopen the case and was therefore not a "final decision" for purposes of restarting § 2401(a)'s six-year time limitation. *See, e.g., Fort Sumter Tours, Inc. v. Babbitt*, 202 F.3d 349, 356 (D.C. Cir. 2000) ("[A]mbiguity as to whether the agency has reopened its decisionmaking" is insufficient to constitute a "final decision" which restarts the statute of limitations period).

We also find unpersuasive Battle's argument that, notwithstanding the admittedly ambiguous language in the BCNR's decision, the BCNR's consideration of the documentary items and legal issues he raised before it was sufficient to support an inference that the BCNR reopened and affirmatively denied his application to adjust his discharge status. Battle claims that he provided "new evidence" in his 2015 Motion such

8

that reopening of his case would have been permissible. Specifically, he claims that he presented two pieces of evidence that the 1978 BCNR review of his case did not consider: (1) a March 31, 1976 AJAG decision withholding approval of his disability discharge, and (2) excerpts from the 1971 Federal Register and Marine Corps Separation Manual ("Manual"). (App. 15).

New evidence, for purposes of reconsideration of a BCNR decision, is "evidence not previously considered by the Board *and* not reasonably available to the applicant at the time of the previous application." 32 C.F.R. § 723.9 (emphasis added). Further, such evidence must be "material," *i.e.,* "likely to have a substantial effect on the outcome." *Id.* The District Court concluded that the purportedly "new" evidence Battle proffered does not meet this definition because, although the 1978 BCNR may not have considered any of the "new" pieces of evidence, all of it was nonetheless "reasonably available" to Battle at that time. For example, with respect to the Federal Register excerpts and Manual, the District Court points out that the BCNR stated in the 1978 decision that that it had considered Battle's application "together with all material submitted in support thereof, naval records, and pertinent statutes, regulations and policies," (App. 15), implying that the BCNR had considered both the 1971 Federal Register excerpts and the Manual because both pieces of evidence could reasonably be understood to fit within the definition of items the 1978 BCNR considered. Even if we disagree that the excerpts and/or the Manual could not arguably fit within the BCNR's definition of things it considered, we nevertheless are persuaded that those two pieces of evidence would have been "reasonably available" to Battle to use in support of his 1978 motion as both the

9

1971 Federal Register and the Manual were undoubtedly available at that time. Further, we are not convinced that such evidence would have been "material" in that it would have had a "substantial effect" on the BCNR's ultimate decision.

Nor is it reasonably debatable that the 1976 AJAG decision was "new and material evidence." The Board was plainly aware of the AJAG decision when it issued its ruling in 1978.[3] The fact that AJAG memoranda from March of 1976 may not have been part of the administrative record does not alter this conclusion. As the District Court reasoned:

> [T]he BCNR, which . . . purported to have reviewed [Battle]'s naval records at the time it rendered its decision, was either aware of the March 31, 1976 memorandum or was at least aware of the material aspects of the decision. At best, the physical record [Battle] asserts to be new evidence would do no more than provide cumulative evidence of a fact of which the board was well aware. Further, given the presumption of regularity that applies to such proceedings, *see* 32 C.F.R. § 723.3(e)(2), there is no basis to find that the BCNR did not have access to a document that would have been part of the record. Regardless, the fact that it was apparently known at the 1978 proceeding that an AJAG had made the decision as to [Battle]'s disability discharge proceedings would demonstrate that evidence of this fact was reasonably available at the time.

(App. 17) (internal punctuation altered). Furthermore, Battle does not point to anything in the purportedly "new evidence" that could have had a "substantial effect" on the

---

[3] Specifically, the Board noted in its decision that:

At the time of your discharge the [AJAG] reviewed the disability proceedings and your disciplinary record, and recommended that you be administratively separated with an undesirable discharge even though your disciplinary record was incomplete and he considered only six nonjudicial punishments and one summary court-martial.

(App. 165).

10

BCNR's 1978 decision. Accordingly, the District Court's conclusion that the 1976 AJAG decision was not "new evidence" was not unreasonable.[4]

Battle also claims that "new arguments" he raised in his 2015 Motion, including those based on our decision in *Taylor v. United States*, 711 F.2d 1199 (3d Cir. 1983), concerning retention of a serviceman beyond his enlistment date, constitute a "changed circumstance" necessary to justify reopening a decision for purposes of § 2401(a). Regardless, we find that the language of the 2016 BCNR decision did not clearly provide it was reopening its initial decision. Furthermore, the 2016 ruling indicated that the argument he was presenting concerning being retained beyond the termination date for his enlistment was addressed in the 1978 ruling, explaining:

> [T]he Board concluded that you were held beyond your enlistment in order to consider your disability case and no regulation existed in 1976 prohibiting that action. As a result, they determined that no regulations were violated and you should not benefit from an argument that you were unfairly held beyond your enlistment when it was originally intended to benefit you. Further, the fact you were already processed and approved for administrative separation prior to the end of your obligated service convinced the Board no injustice exists under those circumstances.

(App. 23). Thus, there is no reason to believe that *Taylor* would have had a material effect on the outcome of the first proceeding.

Accordingly, we are unpersuaded that the BCNR's decision constituted a "reopening" of his case based on the consideration of "new evidence" or "changed

---

[4] On appeal, Battle now notes that there is yet another AJAG memorandum from March 1976 that is missing from the administrative record. Once again, however, Battle fails to demonstrate how this AJAG memorandum would have had a material effect on the outcome of his case as his administrative separation was more than supported by his numerous incidences of misconduct.

11

circumstances" before it.  Therefore, we find that the District Court did not err in concluding that the BCNR's 2016 decision did not constitute a new, "final decision" for purposes of restarting § 2401(a)'s statute of limitations.  Thus, the District Court properly dismissed Battle's case for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's order dismissing Battle's case for lack of subject matter jurisdiction.