**Salahdine SABREE, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 09–369C.**

United States Court of Federal Claims.

Nov. 13, 2009.

Reissued for Publication Dec. 8, 2009.[1]

1. This opinion was issued under seal on November 13, 2009. The parties were given the opportunity to propose material for redaction. The original opinion is reissued with redactions indicated by the designation "[deleted]."

Michael D.J. Eisenberg, Washington, D.C., for the plaintiff.

Steven J. Abelson, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Donald E. Kinner, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division, Washington, D.C. Of counsel, Major Jennifer Bottoms, United States Army Litigation Division, Washington, D.C.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

Plaintiff seeks to correct his military record to reflect a pay grade of E–4, rather than the lower grade of E–3 that he was assigned after his discharge from the United States Army, to delete the nonjudicial punishments reflected in his Army personnel records, and to increase his service-connected disability rating above the [deleted] percent rating that he received at the time of his discharge. Defendant moves to dismiss the complaint asserting a lack of subject matter jurisdiction. Defendant contends that the claims are barred by the applicable statute of limitations and that no basis to toll the statute can be established.

Plaintiff Salahdine Sabree enlisted as a Private (PV–2/E–2) in the United States Army on August 27, 1979. In 1981, he attained the rank of Specialist (E–4). Mr. Sabree reenlisted for three years on March 23, 1982. Shortly thereafter, on July 2, 1982, he received a bar to further reenlistment, as reenlistment by Mr. Sabree was considered not in the best interest of the service. Pursuant to Army Regulation 601–280, any commander in a soldier's chain of command may inititate a bar to reenlistment, which denies "reenlistment to persons whose reentry into or continued service with the Army is deemed to be not in the best interest of the military service." Army Regulation 601–280, "Army Retention Program," ¶ 1–31 (Oct. 1, 1979). Mr. Sabree responded to the bar to reenlistment and asked that it not be imposed. On January 18, 1983, Mr. Sabree's commanders determined that the bar should remain in effect.

On October 9, 1982, Mr. Sabree suffered injuries [deleted] in an automobile accident. On May 18, 1983, a Medical Evaluation Board (MEB) convened, pursuant to Army Regulation 635–40, to review Mr. Sabree's medical status. Under Army Regulation 635–40, an MEB is convened to determine a soldier's medical status. Army Regulation 635–40, "Physical Evaluation for Retention, Retirement, or Separation," ¶ 4–8 (Aug. 1, 1982). If the MEB determines that the soldier does not meet medical retention standards, the board will refer the soldier to a PEB. *Id.* ¶ 4–13. "The PEB is responsible for deciding whether the member is unfit because of physical disability to perform the duties of his office, grade, rank, or rating." *Id.* ¶ 4–18(c). "Each case is first considered by an informal PEB" in order to "reduce the

overall time required to process a case through the disability evaluation system." *Id.* ¶ 4–19. A soldier "is entitled to a formal [PEB] hearing if he [or she] demands it after informal consideration of [the] case by a PEB." *Id.* ¶ 4–20(a). Although the formal PEB is typically composed of the same members who sat on the informal PEB, the formal hearing "allow[s] the member a chance to present his [or her] views, testimony, and new evidence." *Id.* ¶ 4–20(b).

On May 18, 1983, an MEB found Mr. Sabree "medically unfit for further military service" and referred the case to an informal PEB for review. On May 25, 1983, an informal PEB concluded that Mr. Sabree was fit for duty. The informal PEB stated that Mr. Sabree had "no functional impairment which would preclude his satisfactory performance of duty. The PEB considers member fit for duty in his grade and MOS [Military Occupational Specialty]." Mr. Sabree requested a formal PEB hearing "with personal appearance" and "regularly appointed counsel." On June 27, 1983, the requested formal PEB concluded that Mr. Sabree's injuries from the October 9, 1982 automobile accident precluded him from satisfactory performance of his duties. The formal PEB diagnosed Mr. Sabree with [deleted]. The formal PEB recommended that Mr. Sabree receive a [deleted] percent disability rating and separation, with severance pay.[2]

On July 19, 1983, Mr. Sabree sent a letter of rebuttal to the formal PEB. In the letter, Mr. Sabree proposed: "Retire me for 18 months. Then if I'm in good shape, send me back to duty. If not, then I'll take [deleted]." Three days later, the President of the formal PEB responded by letter to Mr. Sabree's letter and reaffirmed the formal PEB decision. The PEB letter indicated that Mr. Sabree's letter and case records had been forwarded to the Army Physical Disability Agency for review.

On November 9, 1983, Mr. Sabree was honorably discharged from active duty due to physical disability, with severance pay. During his military service, he was awarded the Army Service Ribbon, Oversea Service Ribbon, and Expert Marksmanship Qualification Badge with Rifle Bar. Throughout Mr. Sabree's period of active service, the Army had reduced Mr. Sabree's rank because of six nonjudicial punishments imposed against him under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815 (1976,-1982).[3] As a result, at the time of his discharge, Mr. Sabree held the grade of Private (PVT/E–1).[4]

After Mr. Sabree's discharge, on December 19, 1983, an Army Ad Hoc Review Board reviewed whether Mr. Sabree was eligible for severance pay at the grade of a Specialist (SP4/E–4). In 1983, pursuant to General Order 9, the Director of the Army Council Review Boards (Council) was "authorized to establish an Ad Hoc Review Board within the Council to review any case referred to the Council directly by the Under Secretary which does not fall within the purview of any of the competent boards." Department of the Army General Order 9, ¶ 3(c) (Feb. 5, 1969). The Ad Hoc Review Board considered Mr. Sabree's performance record, including his nonjudicial punishments and bar to reenlistment, and unanimously agreed that "the member's service reflects disciplinary actions which preclude determining that he

---

**2.** In accordance with 10 U.S.C. § 1203 (1982), service members assessed as unfit for service with less than 20 years of military service who are assigned a disability rating of less than 30 percent by a separation board are given severance pay instead of being placed either on the Temporary or Permanent Disability Retirement List. Those with a rating of 30 percent or greater are placed on either the Temporary or Permanent Disability Lists and, based on their condition, receive disability retirement pay and benefits.

**3.** Mr. Sabree accepted the following nonjudicial punishments under Article 15 of the Uniform

Code of Military Justice: (1) August 18, 1980—failure to report to duty; (2) September 18, 1980—failure to report to duty; (3) undisclosed date—failure to report to duty; (4) March 16, 1983—failure to report to duty; (5) April 8, 1983—failure to obey a lawful order; (6) April 20, 1983—failure to report to duty.

**4.** Mr. Sabree's August 31, 2005 letter to the Army Board for the Correction of Military Records states that he made a "Request for Reclassification" on February 9, 1983, but no such request is in the record.

had served satisfactorily above the grade of E3." Accordingly, the Ad Hoc Review Board assigned Mr. Sabree severance pay at the grade of Private First Class (PFC/E–3).[5]

The record reflects that in 1999, years after his discharge on November 9, 1983, Mr. Sabree filed for a benefits increase with the Department of Veterans Affairs (VA). On November 15, 2000, the VA determined that Mr. Sabree had "a total serviceconnected disability, permanent in nature," with a combined score of [deleted] percent.[6] As of December 2000, Mr. Sabree's monthly disability payment from the VA was set at $[deleted]. Mr. Sabree's 2000 VA rating included:

1. [deleted].
2. [deleted].
3. [deleted].
4. [deleted].
5. [deleted].
6. [deleted].
7. [deleted].
8. [deleted].

On July 7, 2004, more than twenty years after his November 9, 1983 discharge from the Army, Mr. Sabree applied to the Army Board for Correction of Military Records (Correction Board). In his application, Mr. Sabree requested that the Correction Board remove the administrative bar to reenlistment from his record, correct his record to show his discharge rank at E–3 or E–4, rather than at E–1, and award him the Good Conduct Medal.

On August 4, 2005, the Correction Board denied his application. The Correction Board concluded that the plaintiff was "not worthy of reenlistment" and that the plaintiff's "bar to reenlistment was administratively correct and was correctly reviewed after initial imposition." The decision also stated that "there is no error or injustice related to [Mr. Sabree's] rank" and that the Ad Hoc Review Board determined that Mr. Sabree

was deemed a Private First Class (PFC/E–3) solely for the purpose of determining severance pay. The decision further concluded that, based on his disciplinary record, i.e., the six nonjudicial punishments and bar to reenlistment, Mr. Sabree did not qualify for a Good Conduct Medal. Finally, the Correction Board determined that Mr. Sabree had not filed his request within the Correction Board's three year statute of limitations pursuant to 10 U.S.C. § 1552(b), in this case, three years from the date of his discharge on November 9, 1983, nor had the plaintiff demonstrated through compelling explanation or evidence why it would be in the interest of justice to excuse the untimely filing.

In a letter dated August 31, 2005, Mr. Sabree requested that the Correction Board reconsider the decision, asserting that his disciplinary problems were attributable to the medication prescribed to him for his surgery and that "the medication was hampering [his] ability to function." He also contended that there was no evidence of his inability to maintain his rank prior to his injuries, and that he would have qualified for the Good Conduct Medal had the bar to reenlistment not been placed in his record. On August 24, 2006, the Correction Board denied Mr. Sabree's request, finding that "[t]here is no evidence in the available records nor did the applicant provide documentation that shows his surgical procedure caused his misconduct." The decision also noted that the initial Correction Board decision, issued on August 4, 2005, properly concluded that Mr. Sabree was not qualified for a Good Conduct Medal.

On June 3, 2009, Mr. Sabree filed the above-captioned case in this court. Plaintiff alleges that the Correction Board decisions issued against him were arbitrary and capricious, constituted an abuse of discretion, or were otherwise contrary to law. By way of relief, plaintiff seeks an order from this court

---

**5.** According to defendant's Motion to Dismiss, Mr. Sabree was informed of the Ad Hoc Review Board's decision on January 6, 1984. Plaintiff does not dispute this assertion in his filings with this court.

**6.** According to the complaint, Mr. Sabree alleges, "Over the past 20 years, Plaintiff was ultimately

awarded a [deleted]% service-connected disability compensation by the DVA [Department of Veteran's Affairs]," a figure plaintiff has not reconciled with the VA document contained in the appendix to plaintiff's own brief, which reflects the [deleted] percent figure in 2000.

correcting his military record to reflect a pay grade of Specialist (E–4), a disability rating greater than the [deleted] percent previously awarded by the military, and removal of his Article 15 (Uniform Code of Military Justice) nonjudicial punishments from his personnel records. Plaintiff, who received severance pay for a [deleted] percent disability rating, although not challenging the propriety of his discharge on disability grounds, seeks a disability retirement from the military, rather than a severance pay retirement. Therefore, plaintiff seeks a military medical examination, or in the alternative, that he be considered medically retired in correlation to the disability finding of the Veteran's Administration. Finally, plaintiff requests relief in the form of back pay, benefits, costs, and attorney's fees, including Equal Access to Justice Act fees. Defendant moves to dismiss the complaint filed in this court on the grounds that plaintiff's claim is barred by the statute of limitations.

## DISCUSSION

■ The Tucker Act, 28 U.S.C. § 1491 (2006), permits citizens to sue the government in this court. The Tucker Act, however, requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. *See* 28 U.S.C. § 1491. The Tucker Act states:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

■ As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) seeking a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Navajo Nation,* 537 U.S. 488, 503, n. 10, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003); *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *Collins v. United States,* 67 F.3d 284, 286 (Fed.Cir.), *reh'g denied* (1995); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (citing *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

■ The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir. 2003) (en banc), *cert. denied,* 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 76 (2004); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.2001), aff'd, 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000), *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir.1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998);

*United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied and en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

Suits against the United States are subject to a six-year statute of limitations pursuant to 28 U.S.C. § 2501. This statute sets an express limitation on the jurisdiction granted to this court under the Tucker Act. *See Martinez v. United States,* 333 F.3d at 1304; *Franconia Assocs. v. United States,* 240 F.3d 1358, 1362 (Fed.Cir.2001), *rev'd on other grounds,* 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1376–77 (Fed.Cir.1998); *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1454 (Fed.Cir.1997); *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990) (citing *Soriano v. United States,* 352 U.S. 270, 273–74, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)); *Holloway v. United States,* 60 Fed.Cl. 254, 256 (2004), *aff'd,* 143 Fed.Appx. 313 (Fed. Cir.), *cert. denied,* 546 U.S. 876, 126 S.Ct. 389, 163 L.Ed.2d 173 (2005). The six-year time bar on actions against the United States is jurisdictional, because filing within the six-year period is a condition of the waiver of sovereign immunity in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). *See Caguas Cent. Fed. Sav. Bank v. United States,* 215 F.3d 1304, 1310 (Fed.Cir.2000), *cert. denied,* 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001); *see also John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 136, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Martinez v. United States,* 333 F.3d at 1316; *Frazer v. United States,* 288 F.3d 1347, 1351 (Fed.Cir.2002); *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d at 1454; *Holloway v. United States,* 60 Fed.Cl. at 256. Because the statute of limitations affects this court's subject matter jurisdiction, the requirement is strictly construed. *Alder Terrace, Inc. v. United States,* 161 F.3d at 1376–77; *Holloway v. United States,* 60 Fed.Cl. at 256; *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001), *aff'd in part,* 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (Fed.Cir.2002); *Entines v. United States,* 39 Fed.Cl. 673, 678 (1997), *aff'd,* 185 F.3d 881, 1999 WL 133052 (Fed.Cir.1999) (table), *cert. denied,* 526 U.S. 1117, 119 S.Ct. 1766, 143 L.Ed.2d 796 (1999); *McDonald v. United States,* 37 Fed.Cl. 110, 113 (1997), *aff'd,* 135 F.3d 778, 1998 WL 50945 (Fed.Cir.1998) (table). The start date to begin a statute of limitations calculation for a claim against the United States is "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment....'" *Martinez v. United States,* 333 F.3d at 1303 (quoting *Nager Elec. Co. v. United States,* 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966), *reh'g denied,* 184 Ct.Cl. 390, 396 F.2d 977 (1968)); *Franconia Assocs. v. United States,* 240 F.3d at 1362; *Alder Terrace, Inc. v. United States,* 161 F.3d at 1377; *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988); *Lins v. United States,* 231 Ct.Cl. 579, 582, 688 F.2d 784, 786 (1982), cert. *denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983); *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217, 225 (1964); *Holloway v. United States,* 60 Fed.Cl. at 256. The statute of limitations for a particular plaintiff

begins to "run from the date the plaintiff 'knew or should have known of the claim.'" *Oja v. Dep't of Army*, 405 F.3d 1349, 1358 (Fed.Cir.2005) (quoting *United States v. Beggerly*, 524 U.S. 38, 48–49, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998)), *reh'g and reh'g en banc denied* (Fed.Cir.2005).

■ Defendant moves to dismiss this action based on a lack of subject matter jurisdiction under RCFC 12(b)(1). Subject matter jurisdiction may be challenged at any time by the parties and by the court sua sponte. *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.2004), *cert. denied*, 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (Fed.Cir.1993)); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991); *North Star Alaska Hous. Corp. v. United States*, 76 Fed.Cl. 158, 185, *appeal dismissed*, 226 Fed.Appx. 1004 (Fed. Cir.2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1342 (Fed.Cir.2001) (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.*, 918 F.2d 160, 161 (Fed.Cir.1990) and *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.")).

■ Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff must state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends...." RCFC 8(a)(1); Fed.R.Civ.P. 8(a)(1). When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied*, 538

U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States*, 119 F.3d 1576, 1580 (Fed.Cir.), *reh'g denied and reh'g en banc denied* (Fed.Cir.1997)), *cert. denied*, 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000).

■ A plaintiff must first establish proper jurisdiction in this court before the merits of any action may be evaluated. As the plaintiff, Mr. Sabree has the burden of proving that this court has subject matter jurisdiction, including that his claim is timely. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Sanders v. United States*, 252 F.3d 1329, 1333 (Fed.Cir.2001); *Alder Terrace Inc. v. United States*, 161 F.3d at 1376–77; *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988).

■ In plaintiff's abbreviated complaint, which also includes incorrect citations to statutes not applicable in this court, on behalf of Mr. Sabree, plaintiff's counsel requests back pay and contests the terms of plaintiff's discharge in 1983, including plaintiff's rank and retention in plaintiff's record of disciplinary actions. Counsel does not argue that Mr. Sabree should have been retained in the service. Defendant argues that all of plaintiff's claims are barred by the six-year limitation in 28 U.S.C. § 2501. An action based on a challenge to a discharge from military service accrues immediately upon discharge. *Young v. United States*, 529 F.3d 1380, 1383 (Fed.Cir.2008); *Martinez v. United States*, 333 F.3d at 1303; *Hurick v. Lehman*, 782 F.2d 984, 986 (Fed.Cir.1986); *Bonen v. United States*, 229 Ct.Cl. 144, 148, 666 F.2d 536, 539 (1981), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982); *Joseph v. United States*, 62 Fed.Cl. 415, 417 (2004); *Holloway v. United States*, 60 Fed.Cl. at 256. The plaintiff's cause of action for back pay accrues all at once at the time of discharge. *See Martinez v. United States*, 333 F.3d at 1303; *Bowen v. United*

*States*, 292 F.3d 1383, 1386 (Fed.Cir.2002); *Kirby v. United States*, 201 Ct.Cl. 527, 531 (1973), cert. *denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Joseph v. United States*, 62 Fed.Cl. at 417. The wrongful discharge claim, therefore, does not accrue "each time a payment would be due throughout the period that the service member would have remained on active duty." *Martinez v. United States*, 333 F.3d at 1303. Wrongful military discharge claims are subject to the six-year statute of limitations, pursuant to 28 U.S.C. § 2501. *See Martinez v. United States*, 333 F.3d at 1302. Because resort to a correction board is not mandatory in military pay cases, but rather permissive, application to a correction board is not required before challenging a wrongful discharge in the United States Court of Federal Claims. *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed.Cir.2005).

■ Mr. Sabree's claims regarding the terms of his discharge accrued on the date of his discharge. The complaint states that Mr. Sabree's date of discharge from the Army was November 9, 1983. Mr. Sabree and his attorney filed his wrongful discharge claim in this court on June 3, 2009, more than twenty-five years after his discharge.

■ The complaint incorrectly alleges jurisdiction under section 706 of the Administrative Procedure Act,[7] and plaintiff's brief asserts that "[t]his circuit follows the criteria

that the statute of limitations begins once the military board for correction of military records acts upon a claimant's request for reconsideration." To the contrary, in this Circuit, in *Friedman v. United States*, the United States Court of Claims rejected this argument:

> it does not follow from the general existence of judicial review for Correction Board decisions that those decisions create a new substantive cause of action which has its own, new, limitations period. That a tribunal's rulings are subject to judicial review means that the administrative decision is open to scrutiny by a court, if a timely judicial proceeding is filed—not that the administrative tribunal's decision, in itself, becomes the new measure and the new beginning of the plaintiff's judicial rights.

*Friedman v. United States*, 159 Ct.Cl. 1, 25, 310 F.2d 381, 397 (1962), cert. *denied sub nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

■ Forty years later, in *Martinez v. United States*, the United States Court of Appeals for the Federal Circuit re-stated the rule that, "the existence of judicial review does not, in itself, supply any basis for asserting that the limitations period runs from the time of the Correction Board's decision." *Martinez v. United States*, 333 F.3d at 1312. "[T]he courts have made clear that a Tucker

---

7. For this proposition, Mr. Sabree and his counsel cite not a single case from the United States Court of Appeals for the Federal Circuit, the relevant binding authority for this trial court. Instead, counsel cites a case from the United States Court of Appeals for the Third Circuit, *Green v. White*, 319 F.3d 560, 563 (3d Cir.2003), which in turn cites a case in the United States District Court for the District of Columbia, *Nihiser v. White*, 211 F.Supp.2d 125, 127 (D.D.C. 2002), also not binding on this court. In the United States Court of Federal Claims, money damages are the cornerstone of Tucker Act jurisdiction. The Administrative Procedure Act is not a money-mandating statute because the APA by its terms waives sovereign immunity only for claims seeking "relief other than money damages...." 5 U.S.C. § 702 (2006). *See Martinez v. United States*, 333 F.3d at 1313 ("[T]he Court of Federal Claims lacks APA jurisdiction ....") (citing *Murphy v. United States*, 993 F.2d 871, 874 (Fed.Cir.1993)), cert. *denied*, 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75, *reh'g denied*, 511

U.S. 1118, 114 S.Ct. 2123, 128 L.Ed.2d 681 (1994). As the United States Court of Appeals for the Federal Circuit clarified in *Martinez*, only in cases in which "APA actions did not turn on a claim for money, the actions could ... accrue at the time of the challenged agency action—the action of the correction board in question—rather than at the time of the action that caused the plaintiff monetary loss—the discharge itself." *Martinez v. United States*, 333 F.3d at 1313. Mr. Sabree's claims are Tucker Act actions under money-mandating statutes, and accrued at the time of his discharge. To the extent that Mr. Sabree asserts a separate cause of action under the Administrative Procedure Act, the United States Court of Federal Claims lacks jurisdiction to entertain such a claim. Absent the statute of limitations bar, the court would have jurisdiction of allegations asserted in plaintiff's complaint under the Tucker Act, 28 U.S.C. § 1491, the Military Pay Act, 37 U.S.C. § 204 (2006), and 10 U.S.C. § 1201 (2006).

Act claim for back pay accrues all at once at the time of discharge." *Id.* at 1303. A cause of action does not "re-accrue" at any time when a plaintiff seeks review from a Correction Board. Accordingly, because Mr. Sabree filed his claims well beyond the expiration of the applicable statute of limitations, his challenges to the terms of his discharge, including those claims relating to his discharge rank, corrections to his military record, and back pay benefits, are time-barred.

 In his complaint, Mr. Sabree also seeks disability retirement pay, instead of the severance pay he received based on his [deleted] percent disability rating at the time of discharge. Defendant contends that plaintiff's claim for disability retirement pay likewise is time-barred. Unlike claims based on wrongful discharge, a claim for disability retirement pay generally does not accrue until an appropriate military board denies the claim in a final decision, or refuses to hear the claim. *See Chambers v. United States*, 417 F.3d at 1224 (citing *Real v. United States*, 906 F.2d 1557, 1560 (Fed.Cir. 1990)). The difference between a wrongful discharge claim and a disability retirement pay claim is driven by the money-mandating statutes that govern them. Wrongful discharge cases are brought pursuant to the money-mandating Military Pay Act, 37 U.S.C. § 204, under which resort to a correction board is not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge. *Chambers v. United States*, 417 F.3d at 1224. Disability retirement cases, however, are governed by 10 U.S.C. § 1201, which first requires military boards to determine, or refuse to act, on whether a service

member should be retired for disability, and at what rate, before jurisdiction can be invoked in the United States Court of Federal Claims. *See Chambers v. United States*, 417 F.3d at 1225 (citing *Friedman v. United States*, 159 Ct.Cl. at 13, 310 F.2d at 389).[8]

 "[T]he Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance." *Chambers v. United States*, 417 F.3d at 1225. The limitations period on a claim for disability retirement pay begins to run upon discharge if, at the time of discharge (1) "the service member requested review by an appropriate board and the request was denied," or (2) "the board heard the service member's claim and denied it...." *Id.* "Normally, the Retiring Board is the proper board." [9] *Friedman v. United States*, 159 Ct.Cl. at 24, 310 F.2d at 396. But, "where the claimant 'has not had or sought a [Physical Examination Board], his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the [Physical Examination Board] as the proper tribunal to determine eligibility for disability retirement).'" *Id.* The Federal Circuit in *Chambers v. United States* characterized this as the "first competent board rule." *Chambers v. United States*, 417 F.3d at 1225. "[T]he ultimate question to be answered is: When did the plaintiff have a claim to disability benefits which could be established in a court?" *Real v. United States*, 906 F.2d at 1562.

In *Real v. United States*, the Federal Circuit addressed an exception to the "first competent board rule." In *Real*, the Federal

**8.** The *Friedman* court wrote:

The rationale of all the cases, taken together, is that Congress has given the function of deciding entitlement to disability retirement to the Secretary, acting with or through a statutory board, and that the claim does not accrue until final action on the basis of the determination of the first competent board to decide. As this court has said, "All of these boards, the Retiring Board, the Disability Review Board, and the Board for Correction of Military Records act only in an advisory capacity to the Secretary of War. If his decision on the retirement rights of an officer is alleged to have been arbitrary, then the officer's right to come to the

court 11 for redress accrues as soon as the arbitrary decision is rendered." *Girault v. United States*, 133 Ct.Cl. 135, 144, 135 F.Supp. 521, 526 [1955].
*Friedman v. United States* 159 Ct.Cl. at 18, 310 F.2d at 392; *see also Chambers v. United States*, 417 F.3d at 1224–26.

**9.** A footnote in *Chambers* explains: "A Retiring Board, now called Physical Examination Board or PEB, determines a service member's fitness for duty and entitlement to disability retirement once a Medical Examination Board or MEB finds the soldier does not meet the Army's standards for retention under its regulations." *Chambers v. United States*, 417 F.3d at 1225 n. 2.

Circuit considered "[w]hether the veteran's knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge...." *Real v. United States*, 906 F.2d 1557, 1562 (Fed.Cir. 1990). For there to have been a waiver, the Federal Circuit in *Real* stated that the service member must "ha[ve] been informed that the failure to demand a board prior to discharge will result in his being ineligible for disability benefits from the service," and with this notice, the service member must still not have sought a board. *Id.* at 1562 n. 6.

In *Chambers*, the Federal Circuit considered whether the exception articulated in *Real* applied. The service member in *Chambers* was discharged in 1970, without first receiving a PEB. *Chambers v. United States*, 417 F.3d at 1220–22. Thirty years later, in 2000, the Correction Board issued a final decision denying the service member's claim for disability retirement pay. *Id.* at 1222. The Federal Circuit stated that:

> The appropriate inquiry under *Real*, therefore, is whether at the time of his separation from the Army in 1970, Chambers knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected. We hold that the record is bereft of any evidence that Chambers possessed such knowledge. The medical diagnoses Chambers received prior to discharge ... indicated that his condition was minor, temporary, and circumstantial. Nothing in the record indicates that Chambers considered these diagnoses to be erroneous. Chambers also knew that he was returned to regular duty after his brief hospitalizations. Thus, in 1970, he had no basis for concluding the Army erred in finding him fit for duty and hence suitable for discharge. The *Real* exception does not apply.

*Chambers v. United States*, 417 F.3d at 1226–27. Because in *Chambers* the Federal Circuit concluded that the *Real* exception did

not apply, the court followed the first competent board rule articulated earlier in *Friedman*. The Federal Circuit held that because the service member did not receive a PEB prior to discharge, his cause of action did not accrue until 2000, when the Correction Board—the first competent board—denied his disability claim. *Chambers v. United States*, 417 F.3d at 1227.

■ The facts and issues presented in both *Real* and *Chambers* are distinguishable from the present case. Unlike the *Real* and *Chambers* cases, Mr. Sabree received a PEB, a competent board within the meaning of the first competent board rule, prior to his discharge from the Army. *Real v. United States*, 906 F.2d at 1557; *Chambers v. United States*, 417 F.3d at 1225 n. 2. Accordingly, Mr. Sabree's first competent board was the earlier PEB in June 1983, not the Correction Board proceeding in 2005.

■ As in the case currently before the court, when a service member receives a PEB prior to discharge, the accrual of the statute of limitations starts upon the service member's separation from service, in Mr. Sabree's case, November 9, 1983. *See Chambers v. United States*, 417 F.3d at 1225 (noting that when the service member is afforded a PEB "at the time of discharge," then the "the limitations period begins to run upon discharge"); *Real v. United States*, 906 F.2d at 1560. Therefore, the statute of limitations on Mr. Sabree's retirement disability claim expired on November 9, 1989, six years after his date of discharge. Accordingly, Mr. Sabree's claim for disability retirement pay is untimely.

■ The outcome is the same even though in 2000 the VA assigned Mr. Sabree an overall [deleted] percent disability rating. Although years after his discharge, the VA granted Mr. Sabree an increased disability rating, this does not dictate a similar increase to the 1983 military PEB findings, or a similar disability rating for calculating benefits. Both the VA and the military service branches rely on the Veterans Administration Schedule for Rating Disabilities (VASRD), however, they do so in different ways. The military uses the VASRD, "to determine fitness for performing the duties

of office, grade, and rank, whereas, at various times after discharge, the VA uses the VASRD to determine the disability ratings based on an evaluation of the individual's capacity to function and perform tasks in the civilian world." *Haskins v. United States,* 51 Fed.Cl. 818, 826 (2002). For military retirement purposes, the formal PEB issued Mr. Sabree a disability assessment in 1983. But, for civilian purposes, seventeen years later in 2000, the VA found a higher disability rating appropriate. A VA rating decision is not binding on the service branch. *See Chambers v. United States,* 417 F.3d at 1225; *Bennett v. United States,* 200 Ct.Cl. 635, 643–44 (1973); *Unterberg v. United States,* 188 Ct. Cl. 994, 1003, 412 F.2d 1341, 1346 (1969); *Williams v. United States,* 186 Ct.Cl. 611, 614, 405 F.2d 890, 891–92, *cert. denied,* 396 U.S. 966, 90 S.Ct. 447, 24 L.Ed.2d 432 (1969), *reh'g denied,* 396 U.S. 1047, 90 S.Ct. 692, 24 L.Ed.2d 694 (1970). Moreover, retroactive application of Mr. Sabree's VA rating, issued so many years after Mr. Sabree's discharge, to a much earlier, contemporaneous, formal PEB assessment is not warranted.

 Nor are Mr. Sabree's claims susceptible to equitable tolling in the United States Court of Federal Claims. Conceptually, equitable tolling "preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir.2000) (quoting *Davis v. Johnson,* 158 F.3d 806, 810 (5th Cir.1998), *cert. denied,* 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999)). The party invoking the doctrine of equitable tolling bears the burden of proof and must demonstrate "rare and exceptional circumstances" warranting application of the equitable tolling doctrine. *Felder v. Johnson,* 204 F.3d 168, 170–71 (5th Cir.) (quoting *Davis v. Johnson,* 158 F.3d at 811), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000); *see also Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir.1999), *cert. denied,* 531 U.S. 1164, 121 S.Ct. 1124, 148 L.Ed.2d 991 (2001); *Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 595 (9th Cir.1991) (Equitable estoppel may be appropriate when plaintiffs were prevented from asserting their claims by some wrongful conduct on the part of the defendant, or when extraordi-

nary circumstances beyond the plaintiff's control made it impossible to file the claims on time.), *rev'd on other grounds,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). Equitable tolling amounts to a further waiver of sovereign immunity, and must be narrowly applied based on the facts of the specific case and granted only in "rare and extraordinary circumstances." *See United States v. Patterson,* 211 F.3d at 931–32.

 The United States Supreme Court and the United States Court of Appeals for the Federal Circuit, however, have indicated that equitable tolling is not available in the Court of Federal Claims under the Tucker Act. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. at 136, 128 S.Ct. 750; *Young v. United States,* 529 F.3d at 1384. In *John R. Sand & Gravel Co. v. United States,* the United States Supreme Court addressed the absolute nature of the limitations statute applied in this court's predecessor court, the United States Court of Claims, and reiterated the same rule for this court. Based on a strictly interpreted waiver of sovereign immunity, the rule articulated is that the limitations period in 28 U.S.C. § 2501 is jurisdictional in Tucker Act cases, "and not susceptible to equitable tolling." *Id.* at 136, 128 S.Ct. 750. More recently, the United States Court of Appeals for the Federal Circuit in *Young v. United States* wrote:

> the Supreme Court decided *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008), holding that the statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is jurisdictional and not susceptible to equitable tolling. *Id.* at 753–57.... To the extent that Mr. Young is seeking equitable tolling, such relief is foreclosed by *John R. Sand & Gravel,* wherein the Court held that the Tucker Act's statute of limitations is in the "more absolute" category that cannot be waived or extended by equitable considerations. 128 S.Ct. at 753–54.

*Young v. United States,* 529 F.3d at 1384. Thus, Mr. Sabree's claims are not susceptible to equitable tolling.

Mr. Sabree contends that this court should toll the six-year limitation under 28 U.S.C.

§ 2501 because he was suffering from a mental impairment "at the time of his MEB and PEB processing, as well as during his Discharge and attempts for a record's correction." Although not specifically alleged in his complaint, Mr. Sabree appears to argue in his filings with this court that he was legally disabled because he suffered from "mental illness," including "major depression" and prescription drug abuse after his automobile accident.

■■■■■ Despite the aversion to equitable tolling in this court, the statutory provision 28 U.S.C. § 2501, which establishes the six-year statute of limitations in this court, specifically allows that "[a] petition on the claim of a person under legal disability ... at the time the claim accrues may be filed within three years after the disability ceases." 28 U.S.C. § 2501. "The 'legal disability' provision ... [is] designed to provide relief from some personal handicap or impediment affecting the individual litigant and preventing him from bringing a timely suit." *Goewey v. United States,* 222 Ct.Cl. 104, 113, 612 F.2d 539, 544 (1979). "The law presumes sanity and competency rather than insanity and incompetency." *Id.* "Only a serious impediment can qualify to suspend running of the statute." *Id.* "Legal disability" does not include all kinds of mental conditions, and "narcotic addiction does not in itself constitute a statute-tolling legal disability unless the claimant alleges and shows that he was 'incapable' of understanding the nature" of what occurred. *Id.* at 113, 612 F.2d at 544 (quoting *Cochran v. United States,* 205 Ct.Cl. 876, 1974 WL 21810 (1974)).

■■■■ Mr. Sabree has not met his burden of demonstrating the existence of a legal disability under 28 U.S.C. § 2501. Mr. Sabree received medical and physical examinations prior to his discharge in 1983, but nothing in the record before this court indicates that Mr. Sabree suffered from a disabling mental or drug condition at the time of his discharge. In 2000, many years later, the VA determined that Mr. Sabree suffered from [deleted]. The VA specifically noted, however, that Mr. Sabree [deleted]. The VA concluded that Mr. Sabree should not receive an [deleted] evaluation of [deleted] percent disabled because he did not demonstrate symptoms of:

[deleted].

Further, in 2006, the Correction Board considered whether Mr. Sabree suffered [deleted] and whether such [deleted] caused his misconduct during service. The Correction Board concluded, "There is no evidence in the available records nor did the applicant provide documentation that shows his surgical procedure caused his misconduct."

■■■ Mr. Sabree also claims that due to a mental defect he never received proper notice of his MEB, PEB, and discharge. There also is no evidence in the record that indicates that Mr. Sabree failed to receive proper notice. To the contrary, the evidence shows that from even before the time of his discharge and thereafter, Mr. Sabree vigorously participated in administrative proceedings in an effort to contest the decisions reached by various boards and to secure rights and benefits for himself, including the following:

- Immediately after the May 25, 1983 informal PEB hearing, which concluded that Mr. Sabree was fit for duty, Mr. Sabree requested a formal PEB hearing and asked to personally participate and receive the assistance of counsel;

- On July 19, 1983, Mr. Sabree drafted, signed, and filed a written statement contesting his formal PEB;

- In 1999, Mr. Sabree filed a claim for a benefits increase with the Department of Veteran Affairs;

- On July 7, 2004, Mr. Sabree completed and signed a Correction Board form in which he requested that the Correction Board correct his military record and noted that he would be represented by counsel; and

- On August 31, 2005, Mr. Sabree drafted and signed a separate, two-page statement to the Correction Board requesting reconsideration.

As noted in the *Goewey* case, participation in administrative or legal proceedings indicates that the plaintiff comprehended his legal rights and did not suffer a lack of mental

capacity. *See Goewey v. United States,* 222 Ct.Cl. at 116, 612 F.2d at 546.

In *Goewey,* the plaintiff alleged that his military disability claim should be tolled because he was suffering from a legal disability under 28 U.S.C. § 2501. The plaintiff in *Goewey* had a history of mental illness, which included treatment and hospitalization for various types of obsessive compulsive disorder and a suicidal attempt. *Id.* at 110–11, 612 F.2d at 543. But, during the time period that the plaintiff claimed he was mentally incompetent, the plaintiff also had participated in efforts to obtain a release from a psychiatric hospital, endeavored to secure VA benefits for himself and his family, cooperated with lawyers in defending his criminal prosecutions, and drafted correspondence affecting his own interests. *Id.* at 114–15, 612 F.2d at 545. Based on these activities, the United States Court of Claims in *Goewey* found that the plaintiff's "failure was not for want of acumen...." *Id.* The Court of Claims held that plaintiff's efforts "ma[de] it abundantly clear that plaintiff was able to understand such complexities and was decidedly not adverse to protecting his interests to the utmost." *Id.*

■ Similar to the plaintiff in *Goewey,* Mr. Sabree has failed to demonstrate that during the statute of limitations period, when he could have pursued his claims, he was unable "to understand adverse proceedings, to assist in his own defense, and to follow legal instructions in the furtherance of his own interests...." *Id.* To the contrary, as described above, the evidence in the record indicates that plaintiff completed agency forms, applied for benefit increases with the VA, cooperated with legal counsel during his administrative proceedings, and drafted his own rebuttal statements, all in the furtherance of his own interests. Thus, the evidence shows that Mr. Sabree was capable of comprehending his legal rights during the time that the statute of limitations was running. Accordingly, plaintiff has not carried his burden of proving disabling mental incapacity. Mr. Sabree also has not demonstrated that any disability alleged was continuous during the decades in question. The record only indicates that in 2000, well after the applicable statute of limitations had run, the VA found him to exhibit "major depression." "The general rule is that after the termination of a legal disability the statute of limitations commences to run and the tolling is not reinstated by a recurrence of the disability." *Id.* at 116, 612 F.2d at 546. Once the legal disability ceases to exist, a plaintiff must file a claim within three years. 28 U.S.C. § 2501.

## CONCLUSION

Plaintiff's claims, regarding the terms of discharge, accrued on November 9, 1983, the date of his discharge from the Army. Plaintiff's disability retirement claim also accrued on November 9, 1983, because plaintiff received a formal PEB prior to discharge. Therefore, plaintiff's claims challenging the terms of his discharge and disability retirement pay both expired six years after his discharge, on November 9, 1989. As a result, plaintiff's present action in the United States Court of Federal Claims, filed on June 3, 2009, is time-barred. Defendant's motion to dismiss is granted. Plaintiff's complaint is dismissed, with prejudice. The clerk's office shall enter judgment consistent with this opinion. Costs are awarded to the defendant.

**IT IS SO ORDERED.**